# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN JOSHUA CRISTOBAL,<br><br>Petitioner,<br><br>v.<br><br>CHARLES W. CALLAHAN,<br><br>Respondent. | No. 2:17-CV-0190-DMC-P<br><br><br>MEMORANDUM OPINION AND ORDER |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to the written consent of all parties (ECF No. 14 and 3), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are Petitioner's writ of habeas corpus (ECF No. 1) and Respondent's answer (ECF No. 17). Petitioner did not file a traverse.

///
///
///
///
///
///

1

# I. BACKGROUND

## A. Facts[1]

The California Court of Appeal, Third District, recited the following facts, and Petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> Defendant went to a Sacramento nightclub with Milton Brott and Lance Fletcher to celebrate Brott's birthday. Defendant drove Brott and Fletcher to the nightclub in his white Mercedes Benz. Brott and defendant shared a bottle of vodka with others who met them at the nightclub. Fletcher did not drink any alcohol.
>
> Brott, Fletcher, and defendant left the nightclub around 2:00 a.m. Brott and defendant were drunk. Defendant got into the driver's seat of his car, Brott sat in the front passenger seat, and Fletcher sat in the back seat behind Brott.
>
> Defendant drove southbound on 15th Street and then turned eastbound into the westbound lane of Capitol Avenue. At some point Fletcher saw a car coming toward defendant's car. Defendant swerved, and his car went up onto the curb and hit a sign. Defendant then swerved back onto the street. Defendant did not stop the car.
>
> Fletcher was scared. He said, "Let's get a taxi. Let's just pull over and get a taxi." Defendant did not respond. Fletcher then told defendant there was a police vehicle behind them and to stop. Instead of stopping, defendant accelerated above freeway speed. Fletcher yelled at defendant to pull over and tried to wake Brott. Defendant did not respond to Fletcher's screaming.
>
> Fletcher felt defendant's car hit something. Police later determined defendant's car hit the side of a parked car. Fletcher felt defendant's car "catch air" and then hit something again. It was later determined the Mercedes Benz ultimately hit the back of Alyssa Calonge's parked Toyota Tacoma pickup truck. Fletcher got out of the car after the collision. California Highway Patrol Officer Mark Thompson was in a marked patrol vehicle at about 1:48 a.m. He saw a white Mercedes Benz, later determined to be defendant's car, travel southbound on 15th Street and then turn eastbound onto the westbound lane of Capitol Avenue. The car went up onto the sidewalk and knocked over a stop sign.
>
> Defendant's car traveled toward Officer Thompson's patrol vehicle, forcing the officer to make a hard right to avoid a head-on collision. Defendant's car did not slow down or make any evasive action.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

2

Defendant's car turned back onto 15th Street. Officer Thompson did not see the face of the Mercedes Benz driver but saw that the driver wore a white shirt.

Officer Thompson turned on the overhead and flashing lights of his patrol vehicle. Defendant's car accelerated. Officer Thompson accelerated to 50 or 60 miles per hour, but he could not catch up to defendant's car. At one point, Officer Thompson lost sight of the car. Officer Thompson heard what sounded like a collision and then saw smoke, debris, and what looked like an explosion ahead of him. He saw a blue pickup truck that appeared to have been involved in a collision.

Officer Thompson parked his patrol vehicle behind the pickup truck. He immediately went to the truck and saw a man and a woman on the floorboard of the truck. Two off-duty paramedics assisted with the occupants of the truck.

Officer Thompson then walked to defendant's car. He saw Brott pinned inside the car. The speedometer was stuck at 80 miles per hour. Officer Thompson saw defendant in a grassy area in front of the Mercedes Benz. Officer Thompson asked defendant if he was okay and defendant said "yes." Officer Thompson asked defendant to walk to a nearby bus stop and to sit down. Defendant complied without assistance. Officer Thompson then asked defendant if he was the driver of the Mercedes Benz. Defendant answered "yes." Officer Thompson placed defendant in handcuffs.

Calonge and the other occupant of the truck, Ryan Smrekar, suffered various injuries as a result of the accident. Smrekar was in the hospital for seven days. Fletcher and Brott were also injured.

Defendant had a 0.18 percent blood alcohol level. The People's expert on forensic alcohol analysis and the effects of alcohol opined a person with a 0.18 percent blood alcohol level is too impaired to drive safely. The expert said a man weighing 174 pounds who had a 0.18 percent blood alcohol content would have the equivalent of eight alcoholic drinks in his system. Assuming all of the alcohol was fully absorbed, the same person would have approximately 0.21 percent blood alcohol content (or the equivalent of nine and half alcoholic drinks in his system) at 1:50 a.m. if he had a 0.18 percent blood alcohol content at 3:20 a.m. Defendant weighed approximately 174 pounds. A nurse obtained a blood sample from defendant at 3:20 a.m.

Brott was very reluctant to testify at the trial because he considered defendant a friend. Brott said Fletcher at times had a reputation for lying. But Brott said defendant told him "I fucked up" when defendant visited Brott at the hospital. Defendant apologized to Brott for what happened. Defendant said he wanted to apologize to the people in the pickup truck, but his attorney told him he should not do that.

Sacramento Police Detective James Anderson testified as an expert on major collisions for the People. He opined, based on his interviews with witnesses, the photographs taken at the collision scene, and the physical evidence, that Calonge's pickup truck was parked when defendant's car collided with it. Defendant's expert on accident reconstruction and

3

> occupant kinematics, Dean Reichenberg, agreed the pickup truck was parked at the time of the collision.
>
> Reichenberg concluded the right front portion of defendant's car hit the back of the pickup truck. He said there was nothing in the roadway that caused defendant's car to veer toward the pickup truck. The collision pushed the pickup truck forward and caused it to turn 180 degrees, jump the curb, and strike a large tree. Reichenberg also opined the Sacramento Police Department failed to collect all of the evidence, including body fluid and fabric imprints from the windshield and steering wheel of the Mercedes Benz.
>
> Reichenberg further opined, based on his review of defendant's medical records and the physical evidence, that he could not conclude defendant was the driver of the Mercedes Benz at the time of the collision. He said defendant suffered injuries that were consistent with defendant being in the driver's seat or in the rear passenger seat at the time of the collision. Reichenberg agreed, however, that no physical evidence excluded defendant as the driver.
>
> Defendant attacked the accuracy of the police reports by Sacramento Police Officers Ethan Hanson and Jonathan Gresham. The statements in Officer Hanson's report about Smrekar's location and the officer's arrival time at the hospital, where he observed defendant's blood draw, were incorrect. Officer Gresham's report incorrectly stated the pickup truck was moving at the speed of 30 miles per hour at the time of the collision.
>
> People v. Cristobal, No. C072061, 2015 Cal. App. Unpub. LEXIS 7830 (Oct. 30, 2015).

### B. **Procedural History**

A jury convicted Petitioner of driving under the influence of alcohol while doing an act forbidden by law and causing bodily injury to another; driving with 0.08 percent or more, by weight, of alcohol in his blood while doing an act forbidden by law and causing bodily injury; and failing to stop after causing property damage. The jury also found Petitioner inflicted great bodily injury on Calonge and Smrekar, proximately caused bodily injury to more than one victim, and willfully and unlawfully drove a motor vehicle with 0.15 percent or more by weight blood alcohol concentration. Petitioner was sentenced to an aggregate term of 10 years in prison. Petitioner's sentence was affirmed by the California Court of Appeal, Third District, on October 30, 2015, and on January 27, 2016, the California Supreme Court summarily denied Petitioner's petition for review. Petitioner filed the instant federal habeas corpus petition on January 27, 2017.

///

4

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006)

5

(citing Williams, 529 U.S. at 412). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.
///

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

///

///

**III. DISCUSSION**

Petitioner raises three arguments in his petition. First, Petitioner contends the trial court misapplied California Evidence Code § 352 by applying a higher standard of relevance to expert witness evidence of third-party culpability. Second, Petitioner argues the trial court excluded his expert witness testimony in violation of his Sixth and Fourteenth Amendment rights under the United States Constitution. Third, Petitioner argues the trial court violated his Fifth and Fourteenth Amendment rights under the United States Constitution by refusing to exclude statements made during a custodial interrogation before officers read Petitioner his Miranda rights.

**A.      Evidentiary Rulings**

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is not available for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941). Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994). To raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of

justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960). In any event, an evidentiary error is considered harmless if it did not have a substantial and injurious effect in determining the jury's verdict. See Padilla v. Terhune, 309 F.3d 614, 621 (9th Cir. 2002); see also Laboa v. Calderon, 224 F.3d 972, 976 (9th Cir. 2001).

1.  Claim Based on Application of State Law

In Ground One, Petitioner argues the trial court erred by rejecting his expert witness testimony under a higher standard of relevance than that required under California Evidence Code § 352. Regarding this claim, the state court recited the following:

> Defendant retained Reichenberg to determine the seating positions of defendant and Fletcher at the time of the collision. Reichenberg concluded the identity of the driver of the Mercedes Benz could not be determined from an examination of the available physical evidence. He said both defendant and Fletcher sustained injuries that were consistent with being the driver, and their injury patterns were also consistent with being the right rear passenger.
>
> The People moved in limine to exclude Reichenberg's opinion as inconclusive and therefore irrelevant and insufficient foundation for third party culpability evidence. The People further argued Reichenberg's opinion should be excluded under Evidence Code section 352 because it would add confusion and cause the jury to speculate.
>
> Defense counsel clarified that Reichenberg would not place someone else in the driver's seat. Rather, the expert's opinion would cast doubt on the People's case that defendant was the driver.
>
> The trial court was initially inclined to deny the People's motion, finding the proffered evidence relevant. It said Reichenberg's opinion was "very probative" even if there was "some prejudicial impact." However, after determining there was no other evidence to suggest that anyone other than defendant was the driver and after reviewing cases on third party culpability, the trial court subsequently granted the People's motion.
>
> The trial court said Reichenberg's opinion was pure speculation. And the fact that there was a possibility Fletcher could be the driver was not enough to admit Reichenberg's opinion as third party culpability evidence. The trial court ruled Reichenberg could testify he did not believe defendant was the driver, but he could not opine Fletcher could have been the driver, unless there was some other evidence supporting that conclusion. The trial court did not rule whether the proffered testimony by Reichenberg was inadmissible under Evidence Code section 352.
>
> People v. Cristobal, No. C072061, 2015 Cal. App. Unpub. LEXIS 7830 (Oct. 30, 2015).

The court finds Petitioner's claim that the trial court misapplied California evidence law is not cognizable on federal habeas review. <u>Middleton</u>, 768 F.2d at 1085; <u>see</u> also <u>Lincoln</u>, 807 F.2d at 814; <u>Givens</u>, 786 F.2d at 1381. Here, the state court resolved Petitioner's challenge to the application of California Evidence Code § 352 and this court may not re-try that issue. <u>See</u> <u>Milton</u>, 407 U.S. at 377.

2. <u>Constitutional Claim</u>

In Ground Two, Petitioner claims the trial court violated his Sixth Amendment right to present a defense and Fourteenth Amendment right to due process by excluding his expert witness's testimony regarding the identity of the driver. Respondent argues federal habeas relief on this claim is not warranted because the United States Supreme Court has "yet to squarely address whether a trial court's exercise of discretion to exclude expert testimony may rise to the level of a [constitutional] violation."

While the Supreme Court has indicated that a prisoner's right to present a defense derives from both the due process rights of the Fourteenth Amendment, <u>see</u> <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973), and from the right to have witnesses testify in his favor, <u>see</u> <u>Washington v. Texas</u>, 388 U.S. 14, 23,1019 (1967), a defendant's right to present evidence is not unlimited, <u>see</u> <u>United States v. Scheffer</u>, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998) (holding a defendant's right to present relevant evidence is subject to reasonable restrictions). The Supreme Court has held that "the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." <u>Salem v. United States Lines Co.</u>, 370 U.S. 31, 35 (1962). Given the trial court's broad discretion in denying expert witness testimony, denial of Petitioner's writ does not appear contrary to or an unreasonable application of Supreme Court law.

Respondent argues, however, the Supreme Court has yet to address whether a trial court's exercise of discretion to exclude expert witness testimony constitutes a violation of constitutional rights. The Supreme Court has only ruled on whether an evidentiary rule, on its face, violated a defendant's right to present evidence, and not on an as-applied basis. <u>See</u> <u>Moses v. Payne</u>, 555 F.3d 742, 757-59 (2009); <u>see, e.g.</u>, <u>Holmer v. South Carolina</u>, 547 U.S. 319, 326-31

(2006) (holding an evidentiary rule that prevents defendants from presenting third party culpability evidence, if the judge determined the prosecution's case was strong, violated defendant's constitutional rights). The Supreme Court has not yet ruled that a court's exercise of discretion to exclude evidence violates a criminal defendant's right to present relevant evidence. In the absence of Supreme Court precedent addressing the as-applied challenge raised in this case, the California Court of Appeal's denial could not have been contrary to or an unreasonable application of clearly established law. See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (holding the state court's application of the law could not have been unreasonable if no clear Supreme Court precedent existed).

Though the state court did not directly address the constitutional aspects of petitioner's claim, the state court determined any error was harmless:

> Even if the trial court abused its discretion in excluding Reichenberg's expert opinion that either defendant or Fletcher could have been the driver of the Mercedes Benz, the error was harmless either under the *People v. Watson* (1956) 46 Cal.2d 818 or the *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705] standard of review. There was overwhelming evidence defendant was the driver of the Mercedes Benz. Defendant was the registered owner of the car. Fletcher, the only sober person in the car, testified defendant drove the Mercedes Benz after the group left the nightclub. The collision occurred minutes later. Physical evidence and Officer Thompson's observations of the Mercedes Benz corroborate Fletcher's detailed account. Fletcher's testimony that he felt the Mercedes Benz hit something before it hit another object is supported by evidence that the Mercedes Benz hit a parked car before it collided with Calonge's truck. Officer Thompson saw that the driver of the Mercedes Benz wore a white shirt. Fletcher wore a plaid shirt. Defendant was wearing a white shirt on the day of the collision. Moreover, defendant admitted he was the driver of the Mercedes Benz. Defendant also admitted culpability to Brott. Reichenberg's findings did not establish that Fletcher, and not defendant, was driving the Mercedes Benz when it collided with Calonge's pickup truck.
>
> Defense counsel urged the jury to find that the People failed to prove beyond a reasonable doubt that defendant was driving the Mercedes Benz at the time of the collision. Defense counsel said the fact that defendant owned the Mercedes Benz did not mean defendant was driving when the collision occurred because "[t]here are designated drivers" and "[p]eople drive other people's cars all the time." He pointed out Fletcher knew how to drive. Defense counsel highlighted Reichenberg's finding that it could not be determined, from the physical evidence, whether defendant was the driver. Defense counsel pointed out Fletcher had injuries to his left clavicle and abrasions to the tops of his hands. And Reichenberg said abrasions to the hands and the left clavicle area are common injuries a driver can suffer in a collision. Defense counsel argued the jury should not

11

> rely on defendant's admission because defendant had a 0.21 percent blood alcohol content, he was confused after the collision, and it was not known what question Officer Thompson asked defendant when defendant responded "yes." Defense counsel also attacked the police investigation, Officer Thompson's belated memory about seeing the driver of the Mercedes Benz in a white shirt, and Fletcher and Brott's credibility. But the jury rejected the argument that defendant was not driving when the collision occurred.
>
> On this record, even if the trial court erred in excluding Reichenberg's proffered opinion, the error was harmless beyond a reasonable doubt.

People v. Cristobal, No. C072061, 2015 Cal. App. Unpub. LEXIS 7830 (Oct. 30, 2015).

In referencing Chapman v. California, the state appellate court correctly identified the standard for reviewing trial errors on direct appeal. 386 U.S. 18, 24 (1967). In Chapman, the Court held that "before a [non-structural] constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24. Thus, the application of the Chapman standard was not contrary to Supreme Court law. Nor was the application of this standard unreasonable.

A constitutional error is harmless if it "appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. In thoroughly reviewing the relevant facts, the state appellate court noted the abundance of evidence suggesting Petitioner was the driver of the Mercedes including testimony from Fletcher and Officer Thompson. The jury also had access to Petitioner's admissions to Brott that he "fucked up" and to Officer Morris that he was the driver of the Mercedes. Furthermore, Reichenberg's testimony would not have created a reasonably doubt of Petitioner's culpability. Reichenberg did not place another individual in the driver seat. Rather, based on injury patterns of Petitioner and Fletcher, Reichenberg would cast doubt on the People's case by opining that Petitioner's and Fletcher's injuries were both consistent with being the driver and the right rear passenger. No other evidence, however, suggested anyone other than Petitioner was the driver of the car. Further, the trial court did not ban Reichenberg's testimony completely. The trial court ruled he could testify that he did not believe Petitioner was the driver.

///

This Court finds the state appellate court did not unreasonably find the exclusion of Reichenberg's testimony was harmless beyond a reasonable doubt. Accordingly, the California Court of Appeal's denial of Ground Two was neither contrary to nor an unreasonable application of clearly established federal law.

### B. <u>Custodial Interrogation</u>

In Ground Three, Petitioner claims the trial court violated his Fifth and Fourteenth Amendment rights by admitting into evidence statements obtained by Officer Thompson at the scene of the accident in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). Petitioner argues his admission was taken while he was in custody and before receiving any <u>Miranda</u> advisement of his rights. The California Court of Appeal disagreed and concluded <u>Miranda</u> did not apply because Petitioner was not in custody when he spoke with Officer Morris, stating:

> Here, Officer Thompson was the only officer on scene when he spoke to defendant. Defendant claims the dispositive factors in this custodial analysis are whether Officer Thompson's investigation focused on defendant and whether Officer Thompson intended to arrest defendant. But as we have explained, an officer's unexpressed intent has no bearing on whether the defendant is in custody. (Stansbury v. California, supra, 511 U.S. at p. 326 [128 L.Ed.2d at p. 301] ["any inquiry into whether the interrogating officers have focused their suspicions upon the individual being questioned (assuming those suspicions remain undisclosed) is not relevant for purposes of Miranda "]; Berkemer v. McCarty, supra, 468 U.S. at p. 442 [82 L.Ed.2d at p. 336]; People v. Stansbury, supra, 9 Cal.4th at p. 830 & fn. 1.) There is no indication Officer Thompson communicated to defendant that he suspected defendant caused the collision. There is also no indication the officer told defendant he would be detained or arrested before defendant admitted he was the driver. It does not appear the officer was aggressive, confrontational, or accusatory when he spoke with defendant. As the trial court found, the officer was simply conducting a traffic collision investigation. (Bellomo, supra, 10 Cal.App.4th at pp. 199–200.)
>
> Additionally, Officer Thompson did not physically restrain defendant. Although Officer Thompson did not state how much time passed after he first contacted defendant and before defendant admitted he was driving, the interaction between Officer Thompson and defendant does not appear to have been protracted. And the interaction occurred on a public roadway, where other people were present. (Berkemer v. McCarty, supra, 468 U.S. at pp. 438–439 [82 L.Ed.2d at p. 334] [the fact that questioning occurs in public view and the detained motorist is interviewed by a single officer ameliorates the concerns in Miranda ].)
>
> People v. Cristobal, No. C072061, 2015 Cal. App. Unpub. LEXIS 7830 (Oct. 30, 2015).

13

1    The Fifth Amendment right against self-incrimination guarantees that any person
2    taken into custody shall be informed of his important constitutional rights and shall be given the
3    opportunity knowingly and voluntarily to waive those rights before being interrogated. See
4    Miranda v. Arizona, 384 U.S. 436, 444 (1966). Any statements obtained in the absence of these
5    advisements, may not be used as evidence against the defendant. See id. at 445-55.

6    To prevail on his Fifth Amendment claim, Petitioner must demonstrate that his
7    statements were obtained by police interrogators in violation of the rules of custodial
8    interrogation established in Miranda, that the state trial court committed error in permitting the
9    prosecution to use the product of the improper interrogation, and that the error had a substantial
10   and injurious effect or influence on the jury's determination of its verdict. See Pope v. Zenon, 69
11   F.3d 1018, 1020 (9th Cir. 1995). Before law enforcement officers may question a person in
12   custody, the officers must warn the person of his right to remain silent and to appointed counsel.
13   Id. at 444. Miranda requires that the warnings precede questioning, otherwise any exculpatory or
14   inculpatory statements made by the person are inadmissible. Id.

15   For a Miranda violation to occur, the defendant must be subject to custodial
16   interrogation. To determine whether a person is "in custody" for Miranda purposes, "a court must
17   examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply
18   whether there [was] a "formal arrest or restraint on freedom of movement" of the degree
19   associated with a formal arrest.'" Stansbury v. California, 511 U.S. 318, 322-23 (1994) (quoting
20   California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)). "[T]he only relevant inquiry is
21   how a reasonable man in the suspect's shoes would have understood his situation." Id. The
22   ultimate determination of whether a suspect was in custody is a mixed question of fact and law,
23   qualifying for independent review in federal habeas corpus proceedings. Thompson v. Keohane,
24   116 S. Ct. 457, 465 (1995).

25   Statements made during custodial interrogation without Miranda rights and
26   subsequently used as evidence in trial may be constitutional error and grounds for habeas relief
27   under the AEDEPA. See DeWeaver v. Runnels, 556 F.3d 995, 1000-02 (9th Cir. 2009)
28   (considering Miranda rights as constitutional guarantees and analyzing California prisoner's

§ 2254 habeas petition regarding alleged Miranda violation under AEDPA standards).

Here, the California Court of Appeal recognized the controlling authority of Miranda v. Arizona and other controlling federal authority determining when a defendant is "in custody" for purposes of Miranda. In considering the facts of the case, the court reasonably determined Petitioner was not in custody and, therefore, not entitled to the protections of Miranda. The court reasoned Officer Thompson, by his questions, demeanor, and the totality of the circumstances, was merely conducting a traffic collision investigation. It is undisputed Petitioner was not under arrest at the time Officer Thompson questioned him at the scene of the accident. Moreover, Petitioner was neither under restraint nor in a situation that objectively manifested an inability for him to leave at will. As the California Court of Appeal found, asking Petitioner if he was the driver was not done aggressively, confrontationally, or accusatorily. For these reasons, it was not an unreasonable application of federal law to hold Petitioner was not in custody for purposes of Miranda.

Accordingly, the California Court of Appeal's denial of Ground Three was neither contrary to nor an unreasonable application of clearly established federal law.

## IV. CONCLUSION

Based on the foregoing, the court concludes that Petitioner is not entitled to federal habeas corpus relief.

Pursuant to Rule 11(a) of the Federal Rules Governing Section 2254 Cases, the court has considered whether to issue a certificate of appealability. Before Petitioner can appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Where the petition is denied on the merits, a certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. See Fed. R. App. P. 22(b). Where the petition is dismissed on procedural grounds, a certificate of appealability "should issue if the prisoner can show: (1) 'that

jurists of reason would find it debatable whether the district court was correct in its procedural ruling'; and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" Morris v. Woodford, 229 F.3d 775, 780 (9th Cir. 2000) (quoting Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 1604 (2000)).  For the reasons stated herein, the court finds that issuance of a certificate of appealability is not warranted in this case.

        Accordingly, IT IS HEREBY ORDERED that:

        1.     Petitioner's petition for a writ of habeas corpus (ECF No. 1) is denied;

        2.     The court declines to issue a certificate of appealability; and

        3.     The Clerk of the Court is directed to enter judgment and close this file.

Dated:  August 14, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE